

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2004

# In Re:Metro Life Ins

Precedential or Non-Precedential: Precedential

Docket No. 02-4037

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re:Metro Life Ins " (2004). *2004 Decisions.* Paper 956.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/956

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-4037/4270
_____

SPEROS DRELLES, ESTATE OF
JAMES J. DONAHUE; MARIE
DRELLES; MARY CATHERINE
GRAY; HOWARD HALF; GEORGE
KRESOVICH; MILDRED
KRESOVICH; MARY T. LASKO;
GEORGIANA TOY; KENNETH TOY;
CHARLES J. ABBOTT; ESSIE
ADAMS; MARILYN ADAMS;
DEBORAH ALSTON; JOHN D
ANTONIONO; ROBERT
ARMSTRONG; PATRICIA
AUGUSTINE; HENRY AUGUSTINE;
GAY B. BANES; JOHN T. BARLEY;
JOHN T. BARLEY JR.; BARBARA
BARLEY; PAUL BAUER; RICHARD
BAUER; MADELINE BAUER;
DONALD BECK; KIMBELY BECK;
EARL BRAEUDIGAM; JANICE
BRAEUDIGAM; OLIVE MAE BRICK;
HERMAN BRICK; KATHLEEN
BRYAN; ANDREW BRYAN;
ROOSEVELT BYRANT; CAROL
BRONOUGH; AMY L. BUCHEIT;
THOMAS BURTOFT; SUSAN
BURTOFT; ANTHONY CALABRESE;
SHARON CALABRESE; SAMUEL
CARUSO; DOLORES CARUSO;
CLARENCE CLAUS; MARGARET
CLAUS; SANDRA CLAWSON;
JEVVIFER PETERS; REX COLE;
DEBORAH COLE; FRANK C.
CONTINO; WILLIAMS E. CROFT;
DEBORAH A. CROOK; DAVID W.
CUPEC; JEROME DANENBERG;
GERTRUDE DANENBERG; ROBERT
DANENBERG; ALVIN DAVIS; MARY
DAVIS; ANDREW DENUZZIO; JEAN
DENUZZIO; MARIAN E. DESANTIS;
JOSEPH DILLA; KATHLEEN DILLA;
KATHRYN A. DIODATI; WILHELM
DORFNER; JACQUELINE DORFNER;
RENEE DRUMMOND-BROWN;
NANCY I. ECK; EARL FAIRMAN;
JEAN FERGUSON; RANDALL
FERRARI; HARRIET E. FITTS;
CAROL FRAMPTON; GILBERT J.
FRAUENHEIM; KATHRYN A.
GIBSON; ANTHONY E. GILL;
BARBARA M. GLOVER; ROY G.
GOFF; ALBERT GOTLEIB; MERYL
GOTLEIB; BARRY GOVERNOR;
MARY GOVERNOR; STANLEY
GRABOWSKI; LINDA GRABOWSKI;
DALE GREENAWALD; GLORIA
GREENAWALD; KARN L. GRUVER;
RONALD J. GUINEY; WILLIAM A.
HAFEN; JOHN P. HAMMER;
MARGARET R. HAMMER; CHARLES
HARPER; IRENE HARPER; LOUISE
HARRIS; SARAH HART; STEPHEN
N. HAVRILLA, JR.; JOHN HELFRICH;
NORA HELFRICH; JOHN HOFFMAN;
LOIS HOFFMAN; DOLORES
HUMENIK; EDWARD HUMENIK;
STEVE HYRB; ANNA MARIE HYRB;
JOHN IRWIN; VIRGINIA IRWIN;
DALE JACKMAN; CONSTANCE
JACKMAN; GEORGE JACKSON;
MARGARET JACKSON; KENNETH

1

JAROS; MICHAEL JOHNSON; RUBY JONES; O'NEAL JONES; MARLENE C. JONES; RAYMOND E. KALKBRENNER; FRIEDA KAMEL; JORDAN KAMPOS; SHARON LEE KAMPOS; JAMES KASICKY; ANDREW KASICKY; JOSEPH KIZIOR; DOLORES KIZIOR; MILDRED P. KOBAN; MARY JO KOCHERAN-DAPOS; ROSANNA KOCIAN; DENNIS KOCIAN; ROSANNE KOCSIS; GEORGE S. KOKUS; KENNETH KOTEWICZ; EVELYN KOTEWICZ; JAMES R. KREBBEL; SHARON R. KREUER; BARBARA L. KRYNEVICH; WILLIAM V. LACY; DONALD LADESIK; JEAN LADESIK; JOHN R. LARKIN; DIANE LEBO; LUDMILLA A. LUKSIK; WILLIAM J. LUXON; RAYMOND MACKEWICH; NANCY MACKEWICH; JAMES MARAK; BONITA MARAK; MARILYN E. MERVOSH; LILLIAN Y. MERZLAK; FREDERICK MEYER; ANDREA MEYER; RUTH MILLER; WILLIAM MILLER; ALBERT MINKO; RUTH MINKO; THOMAS MOODY; MICHOLAS MOODY; JEAN MORSE; CHARLES MURPHY; BARBARA MURPHY; JAMES M. MYERS; JAMES H. MYERS; TIM McCARTHY; SANDRA McCARTHY; TERRENCE McCONNELL; JOHN McGARVEY; CINDY McGARVEY; JOHN F. McROBERTS; BONNIE SUE NEIDERHISER; MARY JEAN NEJAK; JOSEPH NIST; THEODORE ORLOWSKI; CATHERINE ORLOWSKI; RONALD ORR;

KARLENE ORR; LILLIAN PARROTTO; WILLIAM PERLINGER; CRESCENZO PETRILLI; RANDY A. PFEIFER; RAYMOND PIAGESSI; ROY D. PIRAIN; MARY POLONCHAK; YVONNE BLYTHE; BARBARA J. POND; MARY JANE POTTER; ALLAN RANDOLPH; ROSEMARY RANDOLPH; HANUMANTHA RAO; STASHIA REEHER; JUDITH E. ROCKWELL; LINDA ROMANELLI; JAMES ROMANELLI; WALTER ROSE; ALNETTA ROSE; EDWARD ROSE; MARY ELLEN ROSE; SHIRLEY SACHS; FRANK J. SAMPSON; HELEN G. SCHABLIK; CHARLES SCHU; LINDA SCHU; ELEANOR J. SCHULTZ; THOMAS SHERIDAN; KATHLEEN SHERIDAN; BONNIE SHERWOOD; GEORGE SMITH; KATHLEEN SMITH; DONNA SMORUL-KOTLINSKI; MELVIN SMULCZENSKI; LOIS SMULCZENSKI; MARY SPARICO; SAMUEL SPENCE; PRESLEY STAHL; ELIZABETH STAHL; ROBERTA STALLINGS; PRESTON STITT; ADRIENNE STITT; JOHN D. STOKES; RONALD A. STOLTZ; ROSEMARY STOYANOFF; DAVID P. SULKOWSKI; GLEN A. SULLIVAN; RICHARD L. TERHUNE; GERARD E. TERWILLIGER; LOUISE THORNTON; DONALD TOOMEY; RITA TOOMEY; DERRICK J. TUSCANO; LUCILLE TYLER; JOHN VENUS; VICTORIA MARIE VERI; THOMAS S. VIG; RITA VIG; ALVIN WEINBERG; LISA ANTIN; ALLEN

WILTROUT; AGNES WILTROUT; DAVID WISE; ESTATE OF EDDIE WRIGHT; ROBERT YAUCH; JENNIE YAUCHKEITH YOUNGER; BRENDA YOUNGER,

Appellants in 02-4270

v.

METROPOLITAN LIFE INSURANCE COMPANY; GARY ANTONINO; JOEL SHERMAN; RONALD SHRAM; UNITED FOOD COMMERCIAL WORKERS INTERNATIONAL UNION; AFL-CIO, CLC; BRUCE A. REZNIK ASSOCIATES, L.P.; METROPOLITAN INSURANCE AND ANNUITY COMPANY, a Delaware Corporation; JEFFREY J. RODGERS; ROBERT MARTINI; JONATHON HOLLY, Resident of Texas; JAMES SPANGLER; STEVEN ANASTASIA; THOMAS M. HYLAND; CHRISTINE DOVAN; JACK E. DUCKWORTH

Metropolitan Life Insurance Company,

Appellant in 02-4037

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

District Court Judge:
The Hon. Donetta W. Ambrose
(Misc. Docket No. 96-179)

_____

Argued: December 12, 2003

Before: AMBRO, FUENTES, and GARTH, Circuit Judges.

(Opinion Filed: December 24, 2003)
_____

B. John Pendleton, Jr. [ARGUED]
McCarter & English, LLP
100 Mulberry St.
Newark, N.J. 07102

*Counsel for Appellant/Cross-Appellee*

Leslie A. Brueckner [ARGUED]
Trial Lawyers for Public Justice, P.C.
1717 Massachusetts Ave., N.W.
Suite 800
Washington, DC 20036

Kenneth R. Behrend
Behrend & Ernsberger, P.C.
Union National Bank Building
306 Fourth Ave.
Suite 300
Pittsburgh, PA 15222

*Counsel for Appellees/Cross-Appellants*

———————————————

OPINION OF THE COURT

———————————————

FUENTES, Circuit Judge:

I.

In December 1999, Plaintiff-Appellant Metropolitan Life ("Metlife") settled an MDL federal class action ("the MDL case") with plaintiffs who had filed actions over allegedly illegal sales practices. In the case before us, Appellees, all represented by the firm Behrend and Ernsberger ("Behrend"), are opt-out plaintiffs pursuing their own individual suits in Pennsylvania state courts against Metlife for allegedly improper sales practices. In those state court proceedings, Appellees[1] have been allowed to conduct discovery of Metlife's nationwide sales practices–including information specifically related to litigants from the MDL case–on the grounds that the sales practices are potentially relevant to Appellees' individual claims. In October 2001, Metlife approached the District Court for an injunction barring Appellees from conducting such discovery, or from

asserting any claim relating to the alleged illegal nationwide practices, on the grounds that it would disturb, or even effectively relitigate, the MDL case that was settled by Metlife in federal court.

The Magistrate Judge issued a Report and Recommendation advising an injunction on the grounds that Plaintiffs were effectively relitigating the illegality of the nationwide practices covered by the MDL case settlement. Upon reconsideration, however, the Magistrate Judge reversed his Recommendation: specifically, while Appellees may have abused Metlife through overbroad discovery requests and allegations in their complaint, they nonetheless had discrete individual claims, and thus it was up to the state courts to decide whether Appellees' specific discovery requests were relevant to those claims. The District Court adopted the Report and Recommendation in its entirety.

II.

A.

The Anti-Injunction Act dictates that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, federal courts are statutorily prohibited from enjoining state court proceedings except in three narrowly excepted categories of cases; the corresponding affirmative empowerment to issue injunctions in these three categories of cases derives from the All-Writs Act, 28 U.S.C. § 1651(a). In re

---

[1] Behrend's opt-out clients are plaintiffs in the state court suits, but are defendants in this case; accordingly, to avoid confusion, we will refer to them as "Appellees."

-4-

Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 365 (3ʳᵈ Cir. 2001) (hereinafter referred to as "Prudential I"). Metlife argues that the District Court had the authority to enjoin Appellees' claims because the instant case falls into either the second or third category of cases: namely, the injunction is either 1) necessary in aid of the District Court's jurisdiction over the MDL case, or 2) necessary to prevent relitigation of the settled claims in the MDL case.

Relying on Prudential I, Metlife contends that Appellees can be enjoined from making any claim or using any evidence related to the claims settled in the MDL case in order to keep the settlement from being disturbed. In Prudential I, the plaintiffs, the Lowes, had four policies with Prudential that fell within the defined parameters of a nationwide class action against Prudential that settled in October 1996 in the District of New Jersey. Id. at 359-61. The Lowes chose to keep two policies within the class action, but to opt out with the other two policies, meaning that they would reap the benefits of the settlement for two of their policies but still retain the option to litigate the other two claims. Id. at 361. The Lowes' state-court complaint based on the opted-out policies contained numerous references to Prudential's nationwide policy, and the Lowes sought discovery over those practices as relevant to the opted-out individual claims. Id. at 362-63. Prudential obtained an injunction from the New Jersey District Court enjoining the Lowes from undertaking

any proceeding in state court "that is based on, relates to or involves facts and circumstances underlying the Released Transactions in the Class Action." Id. at 363 (internal quotations omitted). Our Court affirmed this injunction under the Anti-Injunction and All-Writs Acts. Id. at 369-70.

Metlife argues that the instant case is virtually identical to Prudential I, as the injunctions sought and the state-court complaints at issue are extremely similar in both cases. As the District Court recognized, however, the crucial distinction between Prudential I and the case before us is that the Lowes were parties to the Prudential I settlement because they did not opt out all of their claims. In contrast, Appellees did opt out all of their claims, and were therefore not parties to the MDL case settlement. Metlife tries to downplay the salience of this distinction, but a close reading of Prudential I makes it clear that the Lowes' participation in the settlement was *the* dispositive factor in the case. Id. at 366 ("We must determine whether settlement of claims the Lowes had under the Class Policies precludes them from pursuing claims in Florida purportedly arising from the [opted-out] Policies"), 367 ("the Lowes clearly released Prudential from any claims 'based on,' 'connected with,' 'arising out of,' 'or related to, in whole or in part' their two Class Policies"), 369 ("When the Lowes reviewed the Release and the Class Notice, they surely must have realized that, even though they could exclude certain policies from the settlement while

including others, doing so would jeopardize their ability to prove claims relating to the [opted-out] Policies. The district court was not willing to release them from their bargain; neither are we").

Metlife urges the Court to look beyond the specific facts of Prudential I and embrace a larger goal of protecting class action defendants from having to repeatedly defend against allegations relating to claims they have already settled. Metlife claims that the Prudential I court endorsed this larger goal when it cautioned that state suits concerning the settled claim "could number in the millions." Id. at 367. We believe, however, that Metlife takes this comment out of context; the Prudential I court clearly confined that warning to the context of state-court plaintiffs who had already, like the Lowes and unlike Appellees here, already signed on to the federal settlement. Id. ("allowing the Lowes to prosecute their civil claims in the Florida court would allow an end run around the Class settlement by affording them (*and other class members who might later attempt the same strategy*) an opportunity for relitigation of the released claims") (internal quotations omitted) (emphasis added).

Metlife also asserts that the injunction somehow prevents Appellees from relitigating the settled claims of the class plaintiffs. Appellees, however, are not relitigating the settled claims at all here; they are suing over their own alleged mistreatment at the hands of Metlife, not over someone else's claim.

Metlife observes that Appellees' complaint largely copies the class action complaint in the MDL case and describes at length the allegations against Metlife in the MDL case. To the extent that Appellees may try to bring in evidence of nationwide practices that are irrelevant to their individual claims, however, Metlife is free to object to such evidence before the appropriate state courts, who are the proper authorities to make such evidentiary rulings. Allowing the preemptive approach espoused by Metlife here would essentially nullify Appellee's decision to opt out: "To permit the settlement and release to vest a right in Metlife that it can assert against non-settling plaintiffs, and so to limit or restrict those plaintiffs in the prosecution of state court suits, deprives them of the benefit of having opted out." App. at 34.

In short, Metlife cannot point to any caselaw authorizing an injunction against opt-out plaintiffs like Appellees, who consciously and purposefully refused to join a class action settlement. The cases Metlife points to in support of its argument all deal with plaintiffs who are distinguishable from Appellees. See generally In re The Prudential Ins. Co. of Am. Sales Practices Litig., 314 F.3d 99 (3rd Cir. 2002) (class members who joined settlement tried to collaterally attack settlement in state court); In re Diet Drugs, 282 F.3d 220 (3rd Cir. 2002) (plaintiffs were trying to opt entire unnamed subclass out of nationwide class action); Prudential I, 261 F.3d 355 (enjoined plaintiffs were party to settled class action); Carlough v. Amchem

Prod., Inc., 10 F.3d 189, 204 (3rd Cir. 1993) (enjoined plaintiffs had not yet been given the opportunity to opt out, so state suit was premature).[2] We therefore uphold the denial of the injunction.

B.

Finally, we address Appellees' contention that "the District Court erred in refusing to reject the Magistrate Judge's unsupported dictum stating that the opt-out litigants have committed discovery and pleading 'abuse' in their state court cases." Appellees' Br. at ii. Specifically, Appellees take issue with the following language from the Magistrate Judge's report and recommendation, adopted by the District Court:

> I was convinced when the [first] Report was issued that MetLife is being abused by [Appellees] in their state court actions. Illustrative of this abuse is the fact that many of the state court complaints are mere reiterations of the class action complaint filed in this court–even to the extent of pleading allegations not applicable to the type of policy the individual plaintiff bought and is suing on. This, of course, exposes MetLife to discovery demands that, while they may relate to claims in the complaint, cannot relate to the actual case. Similarly, I believed MetLife was the recipient of unreasonably broad and duplicative discovery requests in the state court cases. I believe this still. But the Report acknowledged, as I readily continue to do, that these are matters for the state courts to address, unless very narrow conditions are present to allow this court to stop it.

App. at 33. Appellees argue that the District Court did not have the legal authority to criticize Appellees' conduct in state court, or alternatively that the District Court's criticisms are clearly erroneous as a matter of fact. Metlife responds that the passage reflects well-based factual findings on the part of the District Court, and should not be stricken. As defined by this Court, dictum is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding." In re

<hr>

[2] In its reply brief, Metlife cites to State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003), for the proposition that Appellees cannot use evidence of Metlife's national practices in their individual cases. Campbell, however, is wholly inapposite, as it deals with the determination of whether a large punitive damage award can be based on such evidence, *not* whether such evidence can be at all relevant to an individual's lawsuit.

McDonald, 205 F.3d 606, 612 (3rd Cir. 2000). Magistrate Judge Benson's comments were clearly dicta under this definition: his opinion of Behrend's tactics was, by his own admission, totally unrelated to his decision to deny the injunction, and he explicitly recognized that the state courts were the appropriate judge of the propriety of Behrend's tactics. Thus, there is no finding of fact to review, let alone to declare clearly erroneous.

In any case, even if the Magistrate Judge's remarks were construed as findings of fact rather than opinions, Appellees' cross-appeal on this issue would still not be appropriate, as federal courts "have not recognized standing to appeal where a party does not seek reversal of the judgment but asks only for review of unfavorable findings." Penda Corp. v. United States, 44 F.3d 967, 972 (Fed. Cir. 1994). Based on this determination, Appellees' arguments that the Magistrate Judge's comments constitute a negative review of various state court rulings in violation of the Rooker-Feldman doctrine and the Younger absention doctrine are wholly without merit. Consequently, we affirm the District Court's judgment in its entirety.