Daniel Arthur HELEVA, Appellant

v.

Warden Mrs. M. BROOKS; PA State Attorney General; Monroe County District Attorney.

No. 07–4118.

United States Court of Appeals, Third Circuit.

Argued March 12, 2009.

Filed: Sept. 14, 2009.

---

J. Nicholas Ranjan (Argued), K & L Gates, Pittsburgh, PA, for Appellant.

James F. Marsh (Argued), Mark S. Matthews, Office of District Attorney, Stroudsburg, PA, for Appellees.

Before FUENTES, CHAGARES, and TASHIMA,* Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Daniel Heleva filed a habeas petition, challenging his state court conviction for first-degree homicide, near the end of the one-year statute of limitations for such petitions—even though he had not yet exhausted his claims in state court as required. Because Heleva feared that he would not have sufficient time left in the limitations period to file the petition in federal court once he had exhausted his claims, he instead filed a motion to stay the petition until he could fulfill the exhaustion requirement. The District Court denied the motion, ruling that under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), it had authority to issue a stay only where the petition was "mixed"—that is, only for petitions containing both exhausted and unexhausted claims. Because the District Court did not consider the Supreme Court's decision in *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), in holding that the *Rhines* stay-and-abeyance procedure applies exclusively to mixed petitions, we vacate the order of dismissal and remand for further proceedings.[1]

---

* Honorable A. Wallace Tashima, Senior United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. The dissent contends that we are "the first [court] to prohibit a district court from dismissing a petition for writ of habeas corpus immediately upon determining that the petitioner exhausted none ... of his federal claims in state court." Dissenting Op. at 193. We believe this mischaracterizes our holding. We do not rule that district courts are prohibited from dismissing unexhausted petitions. We simply remand this matter to the District Court for it to decide whether Heleva is eligible, under the good cause test, for the stay-and-abeyance procedure set forth by the Supreme Court in *Rhines* and endorsed in *Pace*

## I.

Heleva was convicted of first-degree criminal homicide in a November 2004 jury trial in the Pennsylvania Court of Common Pleas, resulting in a sentence of life in prison. Heleva's counsel, Demetrius Fannick, appealed the conviction to the Superior Court of Pennsylvania, but failed to file a brief supporting the appeal. The Superior Court therefore dismissed the appeal on December 5, 2005. Heleva had 30 days from that date to seek review of the dismissal by the Pennsylvania Supreme Court.

Heleva proceeded *pro se,* filing a mandamus-type petition with the Superior Court in May 2006, which was dismissed for lack of jurisdiction a month later. He also filed an application for leave to file in the Supreme Court of Pennsylvania in September 2006, which was granted, after which he sought mandamus relief from that court. The Supreme Court denied his petition without considering the merits. Heleva's petition for certiorari from the United States Supreme Court seeking review of the state supreme court's decision was also denied. Finally, Heleva filed a petition for post-conviction relief under the Pennsylvania Post–Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. Ann. §§ 9541 *et seq.,* in the Court of Common Pleas on December 4, 2006. A day later, on December 5, Fannick also filed a petition under the PCRA challenging Heleva's conviction, unbeknownst to Heleva himself. Heleva later filed an amended PCRA petition on March 29, 2007, framing it as an amendment to the December 5 petition filed by Fannick.

On August 1, 2007, Heleva filed a habeas petition in the District Court for the Middle District of Pennsylvania under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, along with a "Motion for Abeyance" seeking a stay of the § 2254 petition until he could exhaust his state law claims under the PCRA. The District Court dismissed the petition for failure to exhaust state court remedies pursuant to 28 U.S.C. § 2254(b)(1) and denied the motion for abeyance on the ground that a stay under *Rhines v. Weber* would be available only for a "mixed" petition containing both exhausted and unexhausted habeas claims. Heleva timely appealed the District Court's decision, and was granted a certificate of appealability on the issue of whether the denial of a stay was appropriate as to Heleva's unexhausted § 2254 petition.

## II.

■ The District Court had jurisdiction under 28 U.S.C. § 2254(a). We have jurisdiction over the subsequent appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We apply a plenary standard of review to the question of whether a district court has authority to stay a habeas petition. *Crews v. Horn,* 360 F.3d 146, 149 (3d Cir.2004).

## III.

### A.

One of the threshold requirements for a § 2254 petition is that, subject to certain exceptions, the petitioner must have first exhausted in state court all of the claims he wishes to present to the district court.

as governing just this type of situation. We see no problem in allowing such a course which we believe has been sanctioned by the Supreme Court, even in dicta. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 561 (3d Cir.

2003) ("[W]e do not view [Supreme Court] dicta lightly."). Moreover, although we have conducted our own independent review of the merits in this case, we note that, at oral argument, Monroe County itself declined to contest Heleva's position on the stay issue.

28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...."). The Supreme Court has interpreted § 2254(b)(1) to require dismissal of a habeas petition if it contains even a single unexhausted claim—the "total exhaustion" requirement. *Rose v. Lundy,* 455 U.S. 509, 518–19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), however, the Supreme Court held that *Lundy*'s total exhaustion requirement was no longer the unyielding rule. *Rhines* created an exception to *Lundy* for mixed petitions, recognizing that otherwise a petitioner might have to choose between pursuing his exhausted and unexhausted claims:

> As a result of the interplay between AEDPA's 1—
>
> year statute of limitations and *Lundy*'s dismissal requirement [mandating the dismissal of a § 2254 petition containing any unexhausted claims], petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. For example, if the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1–year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition

close to the end of the 1–year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim.... Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case.

*Id.* at 275, 125 S.Ct. 1528.

Therefore, the Supreme Court held that a district court may stay a mixed petition rather than dismiss, holding the petition in abeyance while the petitioner seeks exhaustion of any unexhausted claims in state court. *Id.* However, the Court feared that liberal use of this "stay-and-abeyance" procedure might undermine AEDPA's "twin purposes" of encouraging the swift execution of criminal judgments and favoring the resolution of habeas claims in state court, if possible, before resorting to federal review. *Id.* at 276–78, 125 S.Ct. 1528. Therefore, *Rhines* mandated that a district court should grant a stay only where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278, 125 S.Ct. 1528.

Heleva contends that he satisfies these three requirements and thus should be granted a stay under *Rhines.* His request for a stay is rooted in his concern that, if his current § 2254 petition is dismissed for failure to exhaust, he will not have sufficient time to file a new § 2254 petition once his PCRA claims are properly exhausted. AEDPA provides a one-year statute of limitations for filing a § 2254 petition once a defendant has completed the direct appeal process in state court.

*See* 28 U.S.C. § 2244(d)(1). Heleva asserts that the one-year period began on December 5, 2005, when the Pennsylvania Supreme Court dismissed his direct appeal of his conviction. Although Heleva's filing of a PCRA petition tolled the running of the statute of limitations, *see* 28 U.S.C. § 2244(d)(2), he did not file it until December 4, 2006. Therefore, once the PCRA claims are resolved, Heleva fears he will have only one day to file a § 2254 petition in federal court before AEDPA's one-year statute of limitations runs out, a time period that may not be enough given the vagaries of the prison mail system. He points to that tight timeline as good cause for allowing him to leave the § 2254 petition pending in federal court while he pursues exhaustion in state court.

The District Court reasoned that, whether or not Heleva could demonstrate good cause, *Rhines* confines the availability of stay-and-abeyance solely to mixed petitions. However, that limited approach ignores a case decided by the Supreme Court just one month after *Rhines*. In *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), the Supreme Court sanctioned the use of the stay-and-abeyance procedure in a context outside that of mixed petitions.

*Pace* involved the question of whether under 28 U.S.C. § 2244(d)(2), which provides for tolling of the AEDPA limitations period during the time when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," an untimely filed petition for state post-conviction review triggers such tolling. The Supreme Court held that it does not, rejecting the petitioner's argument that such an interpretation of § 2244 could lead to a prisoner losing his chance at habeas review where he sought to exhaust his claims in state court in good faith and did not discover until much later that the state court petition was not properly filed. 544 U.S. at 416, 125 S.Ct. 1807. The Court reasoned that "[a] prisoner seeking state post-conviction relief might avoid this predicament ... by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.... A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' [satisfying the test laid out in *Rhines*] for him to file in federal court." *Id.*

The Court recommended this course of action without any mention that it could apply only to a mixed petition. Indeed, a distinction between mixed and non-mixed petitions would make no sense in the context of granting a stay to avoid penalizing a prisoner for reasonable confusion about state court filing requirements. In that scenario, a prisoner could be equally subject to the dilemma described in *Pace*, whether his proposed AEDPA petition was mixed or contained only unexhausted claims. Thus *Pace* seems to open the door to utilizing the stay and-abeyance procedure in at least some limited circumstances beyond the presentation of a mixed petition.[2]

2. It is worth noting that the justices dissenting in *Pace* read this passage in the same manner as we do. Justice Stevens warned that "[t]he inevitable result of today's decision will be a flood of protective filings in the federal district courts." 544 U.S. at 429, 125 S.Ct. 1807 (Stevens, J., dissenting). That would not be the result of *Pace* if it only permitted protective petitions to the extent already described in *Rhines*. *See also id.* (describing the *Pace* majority as "encouraging all petitioners"—not just those with mixed petitions—who have doubts regarding the timeliness of their state petitions to seek stay and abeyance).

Appellees point to a Ninth Circuit decision as barring such an interpretation of *Pace.* In *Rasberry v. Garcia,* 448 F.3d 1150 (9th Cir.2006), the Ninth Circuit held that it would "decline to extend [the stay and abeyance procedure] to the situation where the original habeas petition contained only unexhausted claims, but the record shows that there were exhausted claims that could have been included." *Id.* at 1154.

Although that ruling facially supports the District Court's approach, it is not pertinent here. *Rasberry,* which did not cite *Pace* in its discussion of stay and abeyance, was focused on the issue of mixed petitions. The petitioner in *Rasberry* specifically argued that the district court, which had dismissed his case for failure to exhaust, should have first notified him that he had omitted two claims from his § 2254 petition that had been exhausted in state court, so that he could add those claims and make his a mixed petition eligible for a stay under *Rhines. Id.* at 1151. Unlike Heleva, nowhere did Rasberry contend that he had the kind of reasonable confusion about state filing requirements that *Pace* categorized as "good cause" for a stay. The *Rasberry* court's rejection of the idea that the petitioner would be eligible for a stay under *Rhines* merely because his petition could potentially have been brought as a mixed petition therefore has no bearing on whether a petitioner citing reasonable confusion under *Pace* may receive the benefit of stay and abeyance even if his petition is not mixed. And even if *Rasberry* was meant to completely foreclose stays for non-

mixed petitions, we would not find it persuasive in light of *Pace.*

The full range of circumstances in which a habeas petitioner is eligible for stay-and-abeyance is not yet clear, and we do not decide here whether a district court has authority to grant a stay only in the specific scenarios described in *Rhines* and *Pace.* Still, the Supreme Court has indicated that a petitioner may file a "protective" petition meriting a stay under Pace even where only unexhausted claims are at issue. Therefore, the District Court's interpretation of *Rhines* as foreclosing the possibility of a stay for Heleva was in error.

## B.

■ We leave it to the District Court to determine in the first instance whether Heleva has satisfied the three requirements for a stay as laid out in *Rhines:* good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics.[3] 544 U.S. at 278, 125 S.Ct. 1528. However, we do note that the fear Heleva cites as good cause for his stay request—that the small amount of time remaining in the one-year AEDPA limitations period may not be enough for him to file a § 2254 petition once he achieves exhaustion in state court—is not necessarily credible, as Heleva appears to have erred in calculating how much time remains for him to pursue claims under AEDPA.

Section 2244 of AEDPA states that the statute of limitations begins on "the date on which the judgment [to be reviewed] became final by the conclusion of direct review or the expiration of the time for

---

**3.** To be clear, though we hold that good cause as described in *Rhines* and *Pace* does at least encompass more than mixed petitions, we reserve judgment on whether the scenario laid out by Heleva—a habeas petitioner with only hours remaining in the AEDPA limita-

tions period—may qualify as good cause. The parties did not brief the question of what constitutes good cause, and we see no need to definitively outline the bounds of that concept here.

seeking such review." 28 U.S.C. § 2244(d)(1)(A). Usually that provision is applied to hold that the limitations period runs from the date when a prisoner's time for seeking certiorari from the United States Supreme Court expired. *See, e.g., Kapral v. United States,* 166 F.3d 565, 575 (3d Cir.1999). However, where the prisoner never even reached the state supreme court level and thus could not have sought certiorari in the United States Supreme Court, courts have held the statute of limitations to run from the expiration of the time limit for seeking review of the state appellate court decision in the state supreme court. *See, e.g., Long v. Wilson,* 393 F.3d 390, 394 (3d Cir.2004); *Erwin v. Elo,* 130 F.Supp.2d 887, 890 (E.D.Mich. 2001). Here, Heleva had 30 days from the affirmance of his conviction by the Superior Court (Pennsylvania's appellate-level court) on December 4, 2006, to seek certiorari from the Pennsylvania Supreme Court. Therefore, for him the one-year limitations period did not begin until January 4, 2007, with the result that once his PCRA claims are exhausted he will actually have at least 30 days to file a § 2254 petition.[4] The District Court should consider that circumstance in making its good cause determination.

## IV.

For the foregoing reasons, we will vacate the District Court's dismissal of Heleva's § 2254 petition and its denial of his stay request. We remand for the Court to consider whether Heleva has met the stay-and-abeyance standard set out in *Rhines* and thus should be granted a stay.

CHAGARES, Circuit Judge, dissenting.

The majority opinion makes our Court the first to prohibit a district court from dismissing a petition for writ of habeas corpus immediately upon determining that the petitioner exhausted none—not a single one—of his federal claims in state court. I believe that this holding constitutes an unwarranted extension of Supreme Court precedent. In particular, I believe that the majority improperly intuits a *sub silentio* overruling of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) from dicta in *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Therefore, I respectfully dissent.

### I.

#### A.

Until recently, it had been the rule that a district court must dismiss a habeas petition containing at least one unexhausted claim, that is, one claim that has not been subjected to one full round of state-court review. *See Lundy,* 455 U.S. at 515, 522; *Slutzker v. Johnson,* 393 F.3d 373, 379 (3d Cir.2004) ("Under the doctrine of ... *Rose v. Lundy* ..., federal courts must dismiss without prejudice habeas petitions that contain any unexhausted

---

**4.** Heleva suggests that this calculation may not be correct based on a case from the Eastern District of Pennsylvania, *Dockery v. DiGuglielmo,* No. 04–6025, 2006 WL 4457132 (E.D.Pa. Oct.19, 2006), which stated that a Pennsylvania prisoner's "conviction became final in 1991, when the Pennsylvania Superior Court dismissed his direct appeal [for failure to file a brief]." *Id.* at *3. However, that statement does not indicate whether the court held his conviction to be final on the day the appeal was dismissed, September 3, 1991, or 30 days later, on October 3, 1991, since for the purposes of the court's analysis of whether his conviction was final prior to the effective date of AEDPA the distinction was irrelevant. In any case, *dicta* from an unpublished district court opinion cannot override our statement in *Long* that a state court judgment becomes final "after [the] time for seeking discretionary review expires when discretionary review is not sought." 393 F.3d at 394.

claims."). This rule was established at a time when there was no statute of limitations governing habeas petitions. *See Rhines v. Weber*, 544 U.S. 269, 274, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The *Lundy* Court, in crafting this rule, relied at least partly upon the assumption that such a rule would not greatly prejudice a petitioner who came to federal court with some exhausted claims and some unexhausted claims—a so-called "mixed" petition. *See id.* at 273–74. A petitioner who filed a mixed petition could, with relative ease, return to state court as needed until he completed the exhaustion process and then go back to federal court to file one wholly exhausted petition. *See id.* at 274 (citing *Slack v. McDaniel*, 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") made this assumption less plausible. It codified the *Lundy* exhaustion rule, *see Rhines*, 544 U.S. at 274 ("AEDPA preserved *Lundy*'s total exhaustion requirement . . . ."), and it imposed a one-year limitations period that runs from the date the state conviction becomes final. 28 U.S.C. § 2244(d). This period is tolled during the pendency of any properly filed petition for state post-conviction review, but it is not tolled while the federal petition pends in district court. § 2244(d)(2). The *Rhines* Court explained why AEDPA's statute of limitations may undermine the assumption underlying the *Lundy* rule. *See* 544 U.S. at 275. Suppose that a prisoner files a timely federal petition. Suppose further that, *after* the AEDPA limitations period has expired, the district court rules that some of the claims made in that petition have not been exhausted. The *Lundy* rule would require the district court to dismiss the petition. But, because the statute of limitations was not tolled while the district court was reviewing the petition, the petitioner cannot,

after returning to state court to exhaust those claims, file a single, completely exhausted, federal petition. *See id.* Those claims would be time-barred. *See id.*

The *Rhines* Court crafted a narrow exception to *Lundy* with respect to mixed petitions. *See id.* at 277. The Court held, contrary to *Lundy*, that a district court need not dismiss a petition it determines is mixed. *See id.* Rather, it may, if the petitioner shows, *inter alia*, good cause for failing to exhaust completely, stay disposition of the exhausted claims and hold the petition in abeyance while the petitioner completes the exhaustion process. *See id.* at 277–78. Once the petitioner fully exhausts his claims, the district court may then lift the stay and review the petition. *See id.*

### B.

Pursuant to 28 U.S.C. § 2244(d)(2), a "properly filed" state post-conviction review petition tolls the one-year AEDPA statute of limitations governing habeas petitions. In *Pace*, the Court was "require[d] . . . to decide whether a state post-conviction petition rejected by the state court as untimely nonetheless is 'properly filed' within the meaning of § 2244(d)(2)." 544 U.S. at 410. The Court held that such a state filing is not "properly filed" and therefore does not toll the one-year limitations period governing federal petitions. *See id.*

The Court explained that it reached this result by interpreting the statutory phrase "properly filed" according to its "common understanding" and in a way that would not turn the tolling provision "into a *de facto* extension mechanism." *Id.* at 413. The Court then addressed and rejected two of the petitioner's counterarguments. *See id.* at 414–17.

The Court then paused to acknowledge that its holding may present difficulties for certain petitioners. In particular, "a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' and thus that his federal habeas petition is time barred." *Id.* at 416 (quotation marks omitted) (citation to petitioner's brief omitted). The Court offered a suggestion as to how such a petitioner might be able to solve this problem:

> A prisoner seeking state post-conviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber, ante,* at 278. A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

*Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition.").

*Id.* at 416–17 (alteration in original).

## II.

The District Court denied Heleva's motion for stay because it held that stay-and-abeyance applies only to mixed petitions, and not to Heleva's petition, which contained no exhausted claims. The majority holds that this was error, because even though the Court in *Rhines* did not overrule *Lundy* with respect to wholly unexhausted petitions, the Court in *Pace* did so through the solitary snippet quoted above. For the reasons that follow, I cannot agree.[1]

1. I agree with my learned colleagues' rejection of Heleva's argument, *see* Heleva Br. 12–14, that the *Rhines* Court itself overruled *Lundy* with respect to wholly unexhausted petitions. The *Rhines* Court determined that "[a]ny solution to th[e] problem [created by the interaction of *Lundy* and AEDPA's statute of limitations] must ... be compatible with AEDPA's purposes," namely, to "reduce delays" in the implementation of criminal sentences and to encourage prisoners to seek relief in state court before filing a federal petition. *See* 544 U.S. at 276–77 (citation omitted). Heleva argues that reading *Rhines* to allow district courts to stay and hold in abeyance wholly unexhausted petitions would do no more violence to these goals than would allowing courts to stay and hold in abeyance mixed petitions only. Heleva Br. 13. This is plainly incorrect. *Rhines* weakened the prisoner's incentive to exhaust *all* claims before filing a federal petition, but preserved his incentive to exhaust at least *some*. Reading *Rhines* to encompass wholly unexhausted petitions, however, would weaken both of those incentives, not just the former.

But there are more reasons why *Rhines* itself does not encompass wholly unexhausted petitions. For starters, the *Rhines* Court expressly limited the breadth of its decision by stating, very precisely, the issue it addressed:

> We confront here the problem of a "mixed" petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not. More precisely, we consider whether a federal district court has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition.

544 U.S. at 271–72. In addition, the Court underscored the narrowness of its holding by repeatedly acknowledging that it was only considering the mixed-petition context. *See id.* at 275, 277–78. Finally, in a subsequent case, the Court discussed *Rhines* and characterized it as a case about mixed petitions: "as we recently held, a court presented with a mixed habeas petition 'should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims....'

## A.

The analysis must begin with the presumption that the Supreme Court does not overrule prior precedent *sub silentio*. *See, e.g., Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ("The Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *Am. Trucking Ass'ns v. Smith,* 496 U.S. 167, 190, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (rejecting argument that, if accepted, would constitute "*sub silentio* overrul[ing]" of prior Court precedent). This presumption operates even when other decisions have undermined the rationale behind the precedent at issue. *See Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

Further, the Supreme Court "does not decide important questions of law by cursory dicta inserted in unrelated cases." *Permian Basin Area Rate Cases,* 390 U.S. 747, 775, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). Accordingly, it is clear that "dicta does not and cannot overrule established Supreme Court precedent." *Waine v. Sacchet,* 356 F.3d 510, 517 (4th Cir.2004); *see S.F. NAACP v. S.F. Unified Sch. Dist.,* 284 F.3d 1163, 1167 (9th Cir.2002) (holding that the language in one Supreme Court decision "is dicta and should not be taken to overrule the express holding of [another Supreme Court decision]").

If the *Pace* Court did indeed overrule *Lundy,* it did so *sub silentio* and in dicta. The overruling would certainly be *sub silentio*. After all, the Court in *Pace* never expressly stated that it was eroding *Lundy* in any way. And the overruling would come via dicta. Excising *Pace*'s passage about protective petitions from the opinion does not call into question the Court's

holding—that a filing untimely under state law is not "properly filed" within the meaning of § 2244(d)(2)—which the Court expressly indicated it reached by considering the plain meaning of the tolling provision and the danger of that provision functioning as a "*de facto* extension mechanism." *See* 544 U.S. at 413, 417. The Court's advice to a petitioner on how to mitigate potential "[un]fairness" was not necessary to its ultimate resolution of the issue presented. *See Drelles v. Metro. Life Ins. Co.,* 357 F.3d 344, 347–48 (3d Cir.2003) ("As defined by this Court, dictum is 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.'" (quoting *McDonald v. Master Fin., Inc.,* 205 F.3d 606, 612 (3d Cir.2000))); *see also Carter v. Friel,* 415 F.Supp.2d 1314, 1317 (D.Utah 2006) (noting language from *Pace* quoted by majority in the present case is dicta); *Harris v. Beard,* 393 F.Supp.2d 335, 339 (E.D.Pa. 2005) (same).

The majority therefore must overcome two weighty presumptions—one against Supreme Court *sub silentio* overruling, and the other against Supreme Court dicta-based overruling—in holding that the *Pace* Court rendered *Lundy* inapplicable to wholly unexhausted petitions. *See In re Sealed Case No. 98–3077,* 151 F.3d 1059, 1064 (D.C.Cir.1998) (per curiam) (noting that "it is rather implausible that the Supreme Court, in dicta ... meant to overrule *sub silentio* the holdings in [two cases]"). I believe that the majority has failed to do this.

## B.

The language of *Pace* does not suggest (much less compel) *Lundy*'s overruling.

*Rhines, supra,* at 278." *Jones v. Bock,* 549 U.S. 199, 222, 127 S.Ct. 910, 166 L.Ed.2d 798(2007).

The Court's citations to *Rhines* do not indicate that the stay-and-abeyance procedure announced in *Rhines* applies to any petition other than a mixed petition. In the passage at issue, the Court in *Pace* suggested a way to mitigate potential unfairness by noting that a prisoner in the "predicament" the Court described may seek a stay to the extent *Rhines* permits. To that end, the passage's first citation to *Rhines* does not *expand* the scope of stay-and-abeyance, it merely functions as a useful shorthand indicating *when* stay-and-abeyance is available. The passage's second citation to *Rhines* supports this reading. In the parenthetical attached to that citation, the *Pace* Court quoted the *Rhines* Court's reference to a "mixed petition." 544 U.S. at 416–17. Had the *Pace* Court wanted to demonstrate that stay-and-abeyance applies broadly, it could have excised the word "mixed" from that parenthetical, or it could have paraphrased (rather than quoted) the *Rhines* opinion. Yet it did neither.

In addition, reading the Court in *Pace* to have overruled *Lundy sub silentio* and in dicta is especially problematic because to overrule *Lundy* is not simply to tinker with a minor, hyper-technical facet of habeas corpus law. To overrule *Lundy* is to overhaul the Court's exhaustion jurisprudence. Specifically, the majority reads

*Pace* to provide that a district court no longer must dismiss a petition filed by a state prisoner who failed to present even one of his claims for relief to the state courts. I do not. Had the Supreme Court actually disturbed such a venerable part of habeas corpus, see *Ex parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)—a part of habeas corpus that derives from the fundamental notion of comity between state and federal courts, see *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (citing, *inter alia, Lundy,* 455 U.S. at 515–16)—it would have done so expressly.

Put simply, the Court in *Pace* gave *no* indication that it overruled *Lundy* with respect to wholly unexhausted petitions, much less enough of an indication to overcome the presumptions against *sub silentio* and dicta-based Supreme Court overruling. Therefore, I cannot agree with the majority that the *Pace* Court remade exhaustion law surreptitiously, in a paragraph peripheral to its holding.[2]

\*     \*     \*     \*     \*     \*

I believe that the *Lundy* Court's command to dismiss wholly unexhausted petitions remains good law. Therefore, I believe that courts must continue to follow that command.[3]

---

**2.** It is also worth noting that this Court, in at least one post-*Pace* decision, has implied that *Lundy* is still good law with respect to wholly unexhausted petitions. For example, in *Goldblum v. Klem,* we noted that " '*Rose v. Lundy* requires a petitioner to either fully exhaust all claims prior to filing a petition or to raise both exhausted and unexhausted claims in the first habeas petition.' " 510 F.3d 204, 224 (3d Cir.2007) (quoting *Benchoff v. Colleran,* 404 F.3d 812, 820 (3d Cir.2005)). This suggests that *Lundy* requires that a petition filed by a prisoner who does neither of these things—that is, who fails to exhaust any claim in the petition—must be dismissed.

**3.** Accordingly, the only court of appeals to have confronted the issue in a precedential opinion disagreed with today's majority. *Rasberry v. Garcia,* 448 F.3d 1150, 1152, 1154 (9th Cir.2006) ("Once a district court determines that a habeas petition contains only unexhausted claims .... it may simply dismiss the habeas petition for failure to exhaust."). *Rasberry,* a state prisoner, filed a wholly unexhausted habeas petition. The record indicated, however, that he easily could have filed a mixed petition, because he had available to him additional claims which would have been deemed exhausted. *See id.* at 1153. The district court dismissed the petition for failure to exhaust. *See id.* at

**198**

### III.

For the above reasons, I respectfully dissent, and would affirm the judgment of the District Court.

1152. Rasberry returned to state court and exhausted all the claims made in the federal petition that the district court dismissed. *Id.* He then filed a second petition, styled as an "amended" petition, which the district court dismissed as untimely under the AEDPA statute of limitations. *Id.* at 1152–53. Rasberry appealed that dismissal.

On appeal, Rasberry argued that the district court should not have dismissed his second petition as untimely because the AEDPA statute of limitations was equitably tolled during the pendency of his first petition. *See id.* at 1153. Rasberry argued that an "extraordinary circumstance" prevented him from filing his second petition on time. *Id.* This "extraordinary circumstance," Rasberry asserted, was the district court's failure to alert him to the exhausted claims he could have included, to instruct him to amend his petition to include those claims, and then to advise him to request that the district court stay disposition of the exhausted claims and hold the petition in abeyance while he returned to state court to complete the exhaustion process. *See id.* The court of appeals affirmed the dismissal and rejected Rasberry's equitable tolling argument. The court held that what Rasberry characterized as an "extraordinary circumstance" was not one, because the district court had no obligation to provide, *sua sponte*, the guidance he desired. *Id.* at 1153–54.

The court added that the district court had no obligation to hold Rasberry's first, wholly unexhausted, petition in abeyance. *Id.* at 1154. Indeed, the court noted that the district court *lacked the discretion* to do so because, as a threshold matter, the stay-and-abeyance procedure announced in *Rhines* applies only to mixed petitions. *Id.* The district court had no power to employ this procedure even though the record indicated that Rasberry could have included some exhausted claims in his first petition, but did not. *Id.*

Heleva, by contrast, never contends that he could have included any such claims. In other words, *nothing* about Heleva's petition was exhausted—not the claims he actually included, and not the claims he could have included. Under *Rasberry*, then, Heleva's argument that the District Court had the discretion to hold his petition in abeyance would fail *a fortiori*.

The majority acknowledges *Rasberry*, but unduly minimizes its import. First, the majority asserts that the *Rasberry* court's conclusion that the district court lacked the discretion to hold Rasberry's wholly unexhausted petition in abeyance has no relevance here, because Rasberry, unlike Heleva, never argued that he met the *Rhines* "good cause" requirement. I disagree. According to the *Rasberry* court, the district court lacked the discretion to hold Rasberry's wholly unexhausted petition in abeyance not because Rasberry failed to assert "good cause," but because, *as a categorical matter*, stay-and-abeyance applies only to mixed petitions. *See id.* at 1154. The *Rasberry* court's conclusion, then, directly supports the District Court's dismissal of Heleva's wholly unexhausted petition.

Second, the majority appears to suggest that whatever the *Rasberry* court decided should be viewed with some skepticism because the court failed to cite *Pace* in its stay-and-abeyance discussion. But what reason did the court have to cite *Pace* in discussing the availability of stay-and-abeyance? As set forth above, the *Pace* Court did not make the *Rhines* stay-and-abeyance procedure more widely available, because the *Pace* Court did not alter the *Lundy* dismissal rule. The *Rasberry* court evidently recognized this and felt no need to reference, in its discussion of stay-and-abeyance, a case having no bearing upon the circumstances under which a district court may use that procedure.