**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

JOHN DOE,

      Petitioner-Appellant,

v.

JUSTIN JONES, Director;
OKLAHOMA DEPARTMENT OF
CORRECTIONS; E. SCOTT PRUITT,
Attorney General, State of Oklahoma,

      Respondents-Appellees.

No. 12-6311

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:12-CV-00182-F)**

---

Claudia Van Wyk, Federal Community Defender, Eastern District of
Pennsylvania, Philadelphia, Pennsylvania (Robert R. Nigh, Jr., Brewster &
De Angelis, P.L.L.C., Tulsa, Oklahoma, with her on the briefs), for Petitioner-
Appellant.

Seth S. Branham, Assistant Attorney General (E. Scott Pruitt, Attorney General),
State of Oklahoma, Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Petitioner John Doe,[1] a federal prisoner, filed this first habeas petition pursuant to 28 U.S.C. § 2254 and an almost identical post-conviction relief application in state court, challenging the constitutionality of a prior Oklahoma state court conviction based on evidence of actual innocence. He also filed a motion to abate this § 2254 action pending state court exhaustion of his claims. The district court dismissed his habeas petition without prejudice, adopting the magistrate judge's Report and Recommendation and holding that a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), was not available because the petition was not "mixed"[2] as in *Rhines* and, in any event, because petitioner lacked good cause for the stay. Although we disagree with the district court's reasoning regarding the potential application of *Rhines*, we affirm its denial of a stay.

**I**

Petitioner was convicted of first-degree murder by a jury in Oklahoma and sentenced to life without parole. His direct appeal was unsuccessful and he did not file for a writ of certiorari, an application for state post-conviction relief, or a federal habeas petition. He was separately convicted in federal court for robbery of a federally insured bank, which took place in connection with the Oklahoma

---

[1] In light of the sealed nature of portions of the record, we have omitted the name of petitioner and all nonessential facts.

[2] A "mixed" habeas petition contains claims that have been exhausted in state court and ones that have not. *Rhines*, 544 U.S. at 271.

murder, and was sentenced to life imprisonment for that crime. While serving the federal life sentence in Texas, petitioner was convicted of murdering a fellow inmate. The government introduced evidence of petitioner's Oklahoma murder conviction during the sentencing phase of his federal capital case, and he was subsequently sentenced to death.

Petitioner contends that following the imposition of his death sentence, newly discovered evidence came to light of his factual innocence of the Oklahoma murder and related federal robbery. In response to this new evidence—and within one year of the factual predicate that he asserts made its discovery possible (two days short of exactly one year)—petitioner filed a petition for post-conviction relief in Oklahoma state court and this § 2254 petition in federal court,[3] along with a motion to stay and abate the § 2254 proceeding pursuant to *Rhines* until he could exhaust his state court remedies.[4] Petitioner

---

[3] None of the claims in the federal petition were exhausted in state court and, with the exception of the actual innocence claim, they are concededly untimely under 28 U.S.C. § 2244(d)(1).

[4] Petitioner had already filed a 28 U.S.C. § 2255 action in Texas, in which he is challenging his federal death sentence. The federal district court in Texas granted his motion to stay and abate that proceeding pending resolution of post-conviction proceedings challenging his Oklahoma conviction, which the court required him to pursue within thirty days of the order to stay. Four days later, petitioner filed the state and federal requests for post-conviction relief from his Oklahoma conviction.

raises an actual innocence claim both as a freestanding constitutional claim[5] and as a "gateway" to raising his otherwise time-barred constitutional claims, including ineffective assistance of trial and appellate counsel and suppression of exculpatory evidence. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) ("[A] claim of innocence is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." (quoting *Herrera*, 506 U.S. at 404) (internal quotation marks omitted)).

The magistrate judge recommended the motion to stay be denied and the § 2254 petition be dismissed without prejudice because the petition was not mixed as in *Rhines* and because a stay was not warranted. The district court adopted the Report and Recommendation and dismissed the petition. It then denied petitioner's Motion to Alter and Amend Judgment, as well as his request for a certificate of appealability.

Petitioner filed a timely notice of appeal and sought a certificate of appealability from this court, which was granted.

## II

We review de novo the district court's refusal to grant a stay on the basis

---

[5] The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)).

that the petition was not mixed. *Cummings v. Sirmons*, 506 F.3d 1211, 1222 (10th Cir. 2007). We review for abuse of discretion the court's alternative denial of petitioner's particular request for a stay due to his failure to show good cause. *See Rhines*, 544 U.S. at 278-79.

A prisoner challenging a state conviction normally has one year to file a federal habeas petition, starting from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). But if the petitioner alleges newly discovered evidence, the filing deadline is one year from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). Based on petitioner's habeas petition, we assume without deciding that the factual predicate of his actual innocence claim could not have been discovered with due diligence before the alleged triggering event, making the claim timely under § 2244(d)(1)(D). In addition, a habeas petition's claims generally must be exhausted in state court before a federal court may review them. § 2254(b)(1)(A).

Petitioners were not always required to exhaust all of their claims in state court prior to filing a federal habeas petition in order to preserve each claim for federal review. Prior to *Rose v. Lundy*, 455 U.S. 509 (1982), they were able to proceed piecemeal as long as their failure to assert the later grounds in a prior petition was not found to be "an abuse of the writ." *See Sanders v. United States*,

373 U.S. 1, 17 (1963); *see also Lundy*, 455 U.S. at 514 n.6 ("[A] second or successive petition may be dismissed . . . [where] new and different grounds are alleged, [if] the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." (quoting 28 U.S.C. § 2254 Rule 9(b) (1976) (amended 2004))).  The majority of Courts of Appeals "permitted the District Courts to review the exhausted claims in a mixed petition containing both exhausted and unexhausted claims." *Lundy*, 455 U.S. at 513 n.5.

Then, in *Lundy*, the Court held that before a federal district court may review a habeas petition, all of its claims must be exhausted in state court. *Id.* at 522.  This "total exhaustion rule" requires a district court to dismiss habeas petitions containing both exhausted and unexhausted claims. *Id.*  In deciding to require total exhaustion, the Court wanted to thwart prisoners intentionally withholding grounds for habeas relief "in the hope of being granted two hearings rather than one." *Id.* at 521 (quoting *Sanders*, 373 U.S. at 18) (internal quotation marks omitted).  The Court in *Sanders* was concerned about "abuse of the writ," noting that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay." 373 U.S. at 17-18 (discussing successive petitions).  *Lundy* was decided in light of the doctrine that "one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the

litigation, have had an opportunity to pass upon the matter." 455 U.S. at 521 (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (internal quotation marks omitted). The Court determined that total exhaustion "promotes comity and does not unreasonably impair the prisoner's right to relief." *Id.* at 522.

Significantly, *Lundy* was decided at a time when petitioners could return to federal court after exhausting their unexhausted claims to "present their perfected petitions with relative ease," as there was no statute of limitations on filing federal habeas petitions. *Rhines*, 544 U.S. at 274. Only later did Congress enact the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which introduced a one-year statute of limitations for filing federal habeas petitions. § 2244(d)(1)[6]; *see also Rhines*, 544 U.S. at 274. Congress enacted AEDPA to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases" and to streamline the process by requiring a petitioner to exhaust all his claims in state court before filing his federal petition. *Rhines*, 544 U.S. at 276-77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)) (internal quotation marks omitted). At the same time, AEDPA "preserved *Lundy*'s total exhaustion requirement." *See id.* at 274 (citing § 2254(b)(1)(A)).

Almost a decade after Congress enacted AEDPA, the Supreme Court unanimously acknowledged in *Rhines* that the interaction between *Lundy*'s total

---

[6] The one-year clock is stopped while a petitioner's "properly filed" state post-conviction petition is pending. § 2244(d)(2).

exhaustion requirement and AEDPA's statute of limitations created at least two risks: (1) "'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims"; and (2) "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim." *Id.* at 275, 279.

In "recogniz[ing] the gravity of th[e] problem," the Court sanctioned the stay-and-abeyance procedure. *Id.* at 275-78. District courts have the prerogative to decide whether a stay is warranted given the specific circumstances of a case. *Id.* at 276 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254 (discussing general power to stay irrespective of whether petition is mixed). A district court has broad discretion to stay a petition, but the Court made clear that this discretion is not unlimited in the habeas context. *See Rhines*, 544 U.S. at 276-77 (pointing to AEDPA's "timeliness concerns" as limiting such discretion). "[G]ranting a stay effectively excuses a petitioner's failure to present his claims first to the state courts," which is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. But where a petitioner has good cause for filing his federal habeas

petition before first exhausting the claims, and where his unexhausted claims are "potentially meritorious" and his request for a stay is not made solely to delay litigation, a district court's denial of a stay would likely be an abuse of its discretion.  *Id.* at 278.

The magistrate judge denied petitioner's request for a stay because his petition was not mixed and because the judge determined he failed to demonstrate a need for a stay.  We address these reasons in turn.

## A

While the Court in *Rhines* explicitly discussed stays in the mixed-petition context, *id.* at 278, its rationale is potentially applicable to a petition with wholly unexhausted claims that is protectively filed during the pendency of state post-conviction proceedings.  Petitioners with unmixed petitions may run a similar risk of "forever losing their opportunity" for federal review, *id.* at 275, depending on the circumstances.  Their chances of both returning to state court to exhaust their claims and then refiling their federal petition before the limitations period runs may be "slim," especially where the unmixed petition is dismissed near the end of the one-year statute of limitations period.  *See id.*  In such cases, "the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions."  *See id.* at 278. Three Circuit Courts of Appeal have addressed the issue of *Rhines* stays as they apply to unmixed petitions: two have applied *Rhines, see Heleva v. Brooks*, 581

F.3d 187, 191-92 (3d Cir. 2009), *Dolis v. Chambers*, 454 F.3d 721, 724-25 (7th Cir. 2006), and one has declined to do so, *see Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

In *Heleva v. Brooks*, the Third Circuit relied on *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), to conclude the Supreme Court "sanctioned" the application of a *Rhines* stay to "context[s] outside that of mixed petitions." 581 F.3d at 191. The petitioner in *Pace* sought and was denied state post-conviction relief twice before filing a federal habeas petition containing only the claims exhausted in his second state post-conviction relief application. *See* 544 U.S. at 410-11, 418-19. In finding that the second state post-conviction relief application was not "properly filed" due to its untimeliness and that it therefore could not statutorily toll the limitations period under § 2244(d)(2), the Court suggested petitioners could avoid this problem "by filing a 'protective petition' in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* at 416.

As the court in *Heleva* noted, the petition in *Pace* was *not* mixed. 581 F.3d at 191. It observed that "a distinction between mixed and non-mixed petitions would make no sense in the context of granting a stay to avoid penalizing a prisoner for reasonable confusion about state court filing requirements." *Id.*

The petitioner in *Heleva* filed a wholly unexhausted habeas petition and a motion to stay and abate almost eight months after he filed a state petition for

post-conviction relief.  *Id.* at 189.  He did so because he believed he would have only one day left on his federal habeas statute of limitations clock once the state addressed his post-conviction claims.  *Id.* at 191.  The court likened this "tight timeline" to "the kind of reasonable confusion about state filing requirements that *Pace* categorized as 'good cause' for a stay."  *Id.* at 191-92.  It remanded the case to the district court to determine whether the petitioner satisfied the requirements for a *Rhines* stay, instructing the district court to consider, among other things, the amount of time available to a petitioner to file a § 2254 petition after exhausting state court remedies when evaluating whether a petitioner has met the good cause standard.[7]  *Id.* at 192-93.

In *Dolis v. Chambers*, the Seventh Circuit granted a certificate of appealability, vacated the district court's dismissal without prejudice of the petitioner's wholly unexhausted habeas petition, and "remanded with instructions to consider a stay of the federal court proceedings following *Newell v. Hanks*, 283 F.3d 827 (7th Cir. 2002)," the circuit's pre-*Rhines* authority recognizing a court's authority to stay a mixed habeas petition.[8]  *Dolis*, 454 F.3d at 722, 724-25.

---

[7] The court determined the petitioner would actually have had at least 30 days to refile a habeas petition.  *Heleva*, 581 F.3d at 193.

[8] In *Dolis*, the court was addressing the state's request for reconsideration of its ruling, which it construed as a petition for rehearing.  454 F.3d at 722.  The state contended the court had no jurisdiction over the district court's dismissal without prejudice.  *Id.* at 724.  The court denied the petition and applied *Rhines* in analyzing why the district court should consider a stay and abeyance rather than

(continued...)

-11-

Because the petitioner had not yet filed a state post-conviction application and his federal habeas petition did not stop the AEDPA statute of limitations clock, a dismissal without prejudice "would effectively end any chance at federal habeas review." *Id.* at 723-25. While the court did not specify exactly how much time Dolis had remaining on the clock, it noted that "very shortly after the district court dismissed his case, it became impossible for him to refile it, because it would be barred by the statute of limitations." *Id.* at 724. Accordingly, it suggested:

> it would be wise for a petitioner to file in *both* state and federal court *simultaneously*, particularly where there is some procedural uncertainty about the state court post-conviction proceeding, and then ask the district court to stay the federal case until the state case concludes to ensure that she does not miss the one-year deadline.

*Id.* at 725 (emphasis added). The court added that "[i]n keeping with *Rhines*, the district court would naturally have discretion to decide whether a stay was warranted in the particular circumstances of each case." *Id.*

In *Rasberry v. Garcia*, the Ninth Circuit declined to extend the stay and abeyance procedure to "the situation where the original habeas petition contained only unexhausted claims . . . ." 448 F.3d at 1154. Rasberry filed a petition for review in state court, which was denied, but then he filed a federal habeas application which included only unexhausted claims. *Id.* at 1152. He filed a

---

(...continued)
dismissal. *Id.*

-12-

second state post-conviction application to exhaust the claims in his federal habeas petition *only after* his federal petition was dismissed for lack of exhaustion and the federal statute of limitations had run. *Id.* On appeal from the district court's dismissal of his federal petition, he contended the district court was obliged to inform "a pro se petitioner of the right to amend a habeas petition to include exhausted claims that the petitioner omitted from the habeas petition-if it is apparent from the record that the petitioner meant to include the claims." *Id.* at 1153. In light of Rasberry's request for a notice requirement, the Ninth Circuit declined to apply *Rhines* to the petition before it because of a concern that "[s]uch an extension would result in a heavy burden on the district court to determine whether a petitioner who file[d] a petition that on its face is unexhausted may have other exhausted claims that could have been raised." *Id.* at 1154.

While none of these cases map perfectly onto the facts of the present case, petitioner's situation is most like those of the petitioners in *Dolis* and *Heleva*. In each of those cases, the petitioner had a brief amount of time remaining on his federal statute of limitations clock. Whether this is deemed a "tight timeline," *Heleva*, 581 F.3d at 191, or cause for "procedural uncertainty about the state court post-conviction proceeding," *Dolis*, 454 F.3d at 725, it nevertheless is a significant factor in determining whether a *Rhines* stay is appropriate. Petitioner here has only two days remaining on his AEDPA statute of limitations and finds

himself in a similar predicament as the petitioners in *Heleva* and *Dolis* except that he followed the Seventh Circuit's guidance and filed a protective petition.

The court's rationale in *Rasberry* must be read in light of the case's factual context. It is neither surprising nor unprecedented that a court would refuse to recognize an obligation to provide the notice Rasberry requested be provided to all habeas petitioners. *Cf. Pliler v. Ford*, 542 U.S. 225, 231-32 (2004) (declining to require district judges to warn pro se petitioners that their federal claims would be time-barred upon return to federal court). Furthermore, unlike Rasberry, petitioner in the present case raised the exact same claims in both his state post-conviction application and federal habeas petition,[9] which were filed simultaneously just *before* the AEDPA statute of limitations had run: the quintessential "protective petition." Petitioner in the instant case does not seek any type of notice from the district court, only the opportunity to receive a stay and abeyance for the same reasons the Court in *Rhines* adopted the procedure in the first place.

Where a petitioner files a protective federal habeas petition during the pendency of state court proceedings because of the short time period remaining on the federal statute of limitations and can meet the *Rhines* three-part test, the total

---

[9] Notably, this is petitioner's *first* federal habeas petition, and "[d]ismissal of a first federal habeas petition is a particularly serious matter." *Case v. Hatch*, 731 F.3d 1015, 1036 (10th Cir. 2013) (alteration in original) (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)) (internal quotation marks omitted).

-14-

exhaustion rule's protection against "needless piecemeal litigation" and

"proceedings whose only purpose is to vex, harass, or delay" is not

compromised.[10]  This is particularly so because

> [f]actors (2) and (3) of the *Rhines* test itself—that the "unexhausted
> claims are potentially meritorious," and that "there is no indication
> that the petitioner engaged in intentionally dilatory litigation tactics,"
> [*Rhines*, 544 U.S.] at 278, 125 S.Ct. 1528—are designed, together
> with the first factor, to ensure that the *Rhines* stay and abeyance is
> not, contrary to the district court's concern, available "in virtually
> every case."

*Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014).  Thus, the *Rhines* three-part

test strictly limits the availability of a stay where a petitioner has not yet

exhausted his state remedies.  Accordingly, granting a stay where appropriate

under *Rhines* furthers the exhaustion doctrine's principal design "to protect the

state courts' role in the enforcement of federal law and prevent disruption of state

judicial proceedings." *Lundy*, 455 U.S. at 518.

Whether they have mixed or unmixed petitions, petitioners with little

chance of exhausting their claims in state court and returning to federal court

before the limitations period runs should not be foreclosed from the very

mechanism designed to protect against such risk if they can satisfy the *Rhines*

standards.  In such cases, a categorical bar on stays for unmixed petitions would

---

[10] Moreover, the enactment of AEDPA's statute of limitations reduced the
time period in which piecemeal litigation could occur.  *See Lundy*, 455 U.S. at
521 (noting concern that petitioners would splice petitions "in the hope of being
granted two hearings rather than one").

"unreasonably impair the prisoner's right to relief," *id.* at 522, and could

"effectively end any chance at federal habeas review," *Dolis*, 454 F.3d at 725.

Accordingly, we conclude that the district court had discretion to consider a

*Rhines* stay even though petitioner filed an unmixed petition.

**B**

We now turn to the district court's second reason for denying the stay, that

it was unwarranted in this case. The Court in *Rhines* made clear that a district

court would likely abuse its discretion if it denied a stay and dismissed a habeas

petition where "the petitioner had good cause for his failure to exhaust [before

filing his federal petition], his unexhausted claims are potentially meritorious, and

there is no indication that the petitioner engaged in intentionally dilatory

litigation tactics." 544 U.S. at 278. Following its decision in *Rhines*, the Court

provided one example of good cause: "reasonable confusion about whether a state

filing would be timely." *Pace*, 544 U.S. at 416. In doing so, the Court

specifically suggested the filing of a "protective petition" in federal court in order

to avoid the possibility that "a petitioner trying in good faith to exhaust state

remedies . . . litigate[s] in state court for years only to find out at the end that he

never properly filed [as required by § 2244(d)(2)], and thus that his federal

habeas petition is time barred." *Id.* (internal quotation marks omitted). As we

have noted, both *Helvea*, 581 F.3d at 191-92, and *Dolis*, 454 F.3d at 724-25,

equated the short time remaining on a petitioner's AEDPA limitations period to

-16-

the type of good cause recognized in *Pace*. Other courts have determined in the mixed-petition context that the *Rhines* good cause requirement is satisfied where a petitioner's failure to exhaust in state court before filing in federal court was caused by ineffective assistance of post-conviction counsel, *Blake*, 745 F.3d at 983, by the "prosecution's wrongful withholding of information," *Jalowiec v. Bradshaw*, 657 F.3d 293, 304-05 (6th Cir. 2011), or by "any external objective factor that cannot fairly be attributable to [petitioner]," *Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005) (analogizing "good cause" requirement of *Rhines* to "cause" requirement in the procedural default context).

Petitioner here relies on the short time remaining on the AEDPA statute of limitations for his actual innocence claim to establish good cause within the meaning of *Rhines*. Pursuant to our decision in *Lopez v. Trani*, 628 F.3d 1228, 1230-31 (10th Cir. 2010), however, the magistrate judge determined that because petitioner's actual innocence claim would be grounds for equitable tolling of the federal limitations period if that limitations period has run before petitioner is able to refile his federal habeas application after exhausting state court remedies, a stay was unwarranted. While this case was pending appeal, the Supreme Court decided *McQuiggin v. Perkins*, holding that a "credible showing of actual innocence" provides an outright equitable *exception* to AEDPA's statute of limitations. 133 S. Ct. at 1928, 1931-33. The Court departed slightly from our precedent in finding that a petitioner's diligence is a factor in determining the

plausibility of the actual innocence claim. *Compare id.* at 1928, 1935-36

(including unexplained delay as a factor in determining the credibility of actual

innocence claim), *with Lopez*, 628 F.3d at 1231 (noting that "the lack of a

showing of due diligence in pursuing claims should not prevent the equitable

tolling of the statute of limitations for a petitioner who has presented a substantial

claim of actual innocence").

In light of *McQuiggin*, petitioner here does not face a similar dilemma to

the "predicament" of the petitioner in *Pace* or to the petitioners in the other courts

finding that the *Rhines* good cause standard was met. If petitioner does have a

substantial actual innocence claim, as he contends,[11] under *McQuiggin* the

existence of such a claim will serve as an exception to the AEDPA statute of

limitations and he therefore does not have a legitimate concern that the claim will

be time barred in federal court. *See* Aplt. Reply Br. at 6 (conceding *McQuiggin*

"definitively established the availability of an innocence exception to the statute

of limitations"); *McQuiggin*, 133 S. Ct. at 1928.[12] *McQuiggin* thus eliminated

petitioner's tight-timeline predicament, and he no longer has good cause within

_____

[11] We do not decide whether petitioner has a substantial innocence claim. That determination is for the Oklahoma state court to decide in the first instance.

[12] We focus solely on petitioner's actual innocence claim with regard to the need for a stay because the remaining claims are already untimely under AEDPA and do not implicate the court's concern in *Pace* and *Rhines*.

the meaning of *Rhines* for his failure to first exhaust his claims in state court before seeking federal court action.

*McQuiggin*'s factoring of diligence into the credibility of a petitioner's actual innocence claim—whether "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327)—creates no higher burden at the equitable exception stage than the petitioner would face in proving actual innocence as either a gateway, *House v. Bell*, 547 U.S. 518, 538 (2006) ("A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . ."), or a freestanding claim, *id.* at 555 (noting a hypothetical freestanding innocence claim requires "more convincing proof of innocence than [a gateway claim]"). A stay cannot shield petitioner from the consideration of diligence with respect to the reliability of his actual innocence claim, whether a gateway or freestanding claim. *See Schlup*, 513 U.S. at 332 ("[C]ourt[s] may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of . . . evidence [of actual innocence]."); *Herrera*, 506 U.S. at 421-23 (considering "11th hour" affidavits produced ten years after conviction in deciding merits of actual innocence claim).

Petitioner also contends the potential application of the doctrine of laches in state court and the ineffective assistance of post-trial counsel are other sources

-19-

for good cause. However, if a state court determines petitioner is barred by the doctrine of laches, the *McQuiggin* exception will still serve to alleviate concern regarding timeliness of the federal petition. With respect to the possibility that a laches determination could be a procedural bar as an adequate and independent state ground for dismissal of the post-conviction application, this is a hurdle petitioner would have to overcome whether or not a stay is granted. A *Rhines* stay is only concerned with ensuring a federal petition remains timely filed while a petitioner's claims are exhausted in state court; it does not protect a federal petition from the state's possible "defense" of an adequate and independent state ground. Likewise, petitioner's concern that a laches determination may generate factual findings regarding petitioner's diligence to which the district court may owe deference is irrelevant to the need for a stay. With or without a stay, petitioner will still face the same burden to show a substantial actual innocence claim, as discussed above. Assuming arguendo there are factual findings from the state court regarding petitioner's diligence, these will have the same effect in federal court whether or not a stay is granted. Finally, even assuming ineffective assistance of post-trial counsel could provide good cause in isolation, because petitioner's actual innocence claim is the gateway for consideration of these otherwise untimely claims, the available *McQuiggin* exception to AEDPA's statute of limitations removes any need for a stay in this case.

Given that grounds exist for an equitable exception to the AEDPA statute of limitations, petitioner cannot demonstrate the good cause necessary to support a *Rhines* stay and abeyance of this action, and the district court did not abuse its discretion in so holding. We therefore need not reach the issue of whether petitioner's actual innocence claim is itself a freestanding constitutional claim or merely a gateway for otherwise time-barred constitutional claims. *See McQuiggin*, 133 S. Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Case*, 731 F.3d at 1036 (same).

### III

We AFFIRM the district court's denial of the stay and its dismissal without prejudice of petitioner's habeas petition.

*Doe v. Jones*, 12-6311

**TYMKOVICH**, J., dissenting in part and concurring in the judgment.

I concur with the ultimate disposition but write separately for three reasons. First, I would decline to extend *Rhines v. Weber* to petitions that make only unexhausted claims, which is the case here. Second, I read the first factor of the *Rhines* test to require a showing of good cause for failure to exhaust one's claims in state court rather than a showing of good cause for a stay. Third, even if *Rhines* does apply to entirely unexhausted petitions, Doe is not entitled to a stay because we do not recognize actual innocence as an independent ground for habeas review.

### A. Rhines' *Applicability*

The Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005), held that, in limited circumstances, a federal court may stay and hold in abeyance a habeas petition when the petitioner has exhausted some but not all of his potential claims (*i.e.* has filed a "mixed petition"). *Rhines* thus abrogated the "total exhaustion" rule the Court had adopted in *Rose v. Lundy*, 455 U.S. 509 (1982), a case predating the habeas reform Congress effected in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In *Rhines*, the Supreme Court expressed concern that, because of the interplay between AEDPA's one-year statute of limitations and the potential delays in both state and federal courts' evaluations of pending petitions, a petitioner through no fault of his own could find potentially meritorious claims time-barred. The Supreme Court solved this

problem by allowing district courts to accept the habeas petition and stay federal court proceedings until after the petitioner has exhausted state court remedies.

The majority extends *Rhines* to apply also to petitions that make only unexhausted claims. I disagree with that conclusion because (1) I read *Rhines* to restrict itself to mixed petitions, and (2) applying *Rhines* to entirely unexhausted petitions is contrary to principles of comity, federalism, and finality.

These conclusions flow from *Rhines*. There, the Supreme Court limited its decision to the mixed nature of the petition at issue in that case. The Court did not suggest in any way it was discarding its adherence to *Rose v. Lundy* for entirely unexhausted petitions. In *Lundy*, the Court persuasively articulated its rationale for enforcing a total exhaustion rule: to vindicate the state court's concurrent role in initially enforcing not only state but federal law as it applies to prisoner petitions. *Lundy*, 455 U.S. at 518.

Congress, through AEDPA, further protected those interests by codifying *Lundy*'s total exhaustion rule. 28 U.S.C. § 2254(b)(1)(a) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has

exhausted the remedies available in the courts of the state.").[1] As the *Rhines* Court explained,

> Congress enacted AEDPA against the backdrop of *Lundy*'s total exhaustion requirement. The tolling provision in § 2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a properly filed application for State post-conviction or other collateral review is pending. This scheme reinforces the importance of *Lundy*'s simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court.

544 U.S. at 276–77 (citations and internal quotation marks omitted).

The Court also cautioned that federal court interference, even if the federal court is merely staying the federal claim, can frustrate Congress's attempt to promote both comity and finality.

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's

---

[1] The statute does provide two exceptions to this rule: 1) if "there is an absence of available State corrective process" or 2) if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(b). Neither of those exceptions applies here.

incentive to exhaust all his claims in state court prior to filing his federal petition.

*Id.* at 277.

These principles are still persuasive. *Lundy* encourages filing in state court, and *Rhines* reaffirms that position, making clear that mixed petitions were eligible for stays, but "only in limited circumstances." *Id.* at 277. Extending *Rhines* to unexhausted petitions undermines AEDPA's goal of incentivizing petitioners to press for relief in state court.

Thus, where a petitioner presents an unexhausted petition in federal court, I would hold that federal courts should abide by the direction given to us in *Lundy*: we should "defer action" until the state court has had the opportunity to perform its review function. *Lundy*, 455 U.S. at 518.

The power of precedent is not the only reason for which we should decline to extend *Rhines*. The *Rhines* Court articulated a clear policy rationale based on the nature of mixed petitions—a petitioner was trapped between the "rock" of choosing to present only exhausted claims in federal court and the "hard place" of surrendering all exhausted and unexhausted claims to the risk that they would not be adjudicated in federal court before the AEDPA statute of limitations ran.[2]

---

[2] In *Rhines*, the Court also expressed concern for the petitioner who relied on the federal district court to determine if his claims had indeed been exhausted. 544 U.S. at 275. If the district court's review took longer than a year, it would have run out the clock, and the petitioner would not have the opportunity to return to federal court after exhausting in state court. *Id.* That is not the case here. Doe

(continued...)

-4-

A petitioner with only unexhausted claims does not have to make that choice. In fact, only one option has been available: petitioners must proceed to state court to exhaust their claims, and AEDPA does not authorize the federal courts to take any action until then.

The majority bases its conclusions on *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). But that case does not state or imply that the *Lundy* rule should be discarded. In fact, the logic of *Lundy* and *Rhines* teaches that the better analysis is to dismiss unexhausted petitions without prejudice and wait for the state courts to finish their work.

The majority worries that, if a petitioner goes directly to state court and the state court determines the state action is improperly filed for some reason, the petitioner will forever lose an opportunity for federal review. I think that an illusory risk. In the rare circumstances such a scenario might occur, a petitioner can, for example, still rely on equitable tolling or the miscarriage of justice exception. *Pace*, 544 U.S. at 418; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (distinguishing the miscarriage of justice exception and equitable tolling). At least in Doe's case, the majority agrees, finding that Doe does not need a stay because, if his claims are meritorious, *McQuiggin*'s miscarriage of justice exception will open the door to federal court.

---

[2](...continued)
recognizes that all of his claims are unexhausted.

-5-

Alternatively, petitioners can challenge a procedural bar. The Supreme Court has held that, if "the State's procedural requirements for presenting [a petitioner's] federal claims [have] deprived the state courts of an opportunity to address those claims in the first instance," the federal courts should not allow that state law procedural bar to prohibit federal review when the petitioner can show both cause for the default as well as prejudice attributable to the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013) (applying the same cause and prejudice exception after the enactment of AEDPA). Given that the law provides a petitioner in these circumstances an opportunity for federal review, no reason exists to believe that the Court has abrogated the *Lundy* rule for entirely unexhausted petitions.

While the circuits are split, I believe *Lundy* is good law and applies here. *Compare Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("Once a district court determines that a habeas petition contains only unexhausted claims, it need not inquire further as to the petitioner's intentions. Instead, it may simply dismiss the habeas petition for failure to exhaust."), *with Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir. 2009) ("[T]he Supreme Court has indicated that a petitioner may file a 'protective' petition meriting a stay under *Pace* even where only unexhausted claims are at issue.").

-6-

In sum, I would affirm dismissal of Doe's petition because I would decline to extend *Rhines* to petitions making only unexhausted claims.

### B.  Rhines *Analysis*

Even if *Rhines* applied to unmixed petitions, I would decline to issue a stay here, but I would do so for different reasons than the majority.

I read the first factor of the *Rhines* test to require a different inquiry than the majority conducts here.  The majority has determined that Doe cannot show good cause for a stay because a stay is not necessary to preserve Doe's opportunity to be heard in federal court.  But I read *Rhines* to inquire whether Doe has shown *good cause for failure to exhaust his state court remedies*, not good cause for a stay.

In *Rhines*, the Supreme Court expressly defined the first factor of its test as "good cause *for his failure to exhaust*."  544 U.S. at 277 (emphasis added); *see also id.* ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.").  The Court indicated that it so limited the circumstances in which we should grant a stay to avoid frustrating AEDPA's purposes of promoting finality and encouraging petitioners to seek relief from state courts.  *Id.* at 276–77.

In *Pace*, the Court used slightly different language, writing, "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court. *Rhines*, 544 U.S. at 278 ('[I]f the petitioner had good cause for his failure to exhaust . . .')." *Pace*, 544 U.S. at 416.

But I do not read *Pace* to abrogate the *Rhines* test. Although *Pace* discussed good cause for filing in federal court, the *Pace* Court's inclusion of the relevant quotation from *Rhines* clarifies any ambiguity. Further, because *Pace* was published less than a month after *Rhines*, I see no reason to believe that, in that short time, the Court changed its mind about the nature of this test. Determining whether the petitioner has shown good cause for failing to exhaust state court remedies before filing a habeas petition in federal court is still the first step of a *Rhines* analysis. *See Fairchild v. Workman*, 579 F.3d 1134, 1153 (10th Cir. 2009) (citing *Rhines* and *Pace* for the proposition that a petitioner "should be permitted to demonstrate that he had good cause for failing to exhaust the claim.").[3]

---

[3] Although the majority is not alone in having interpreted the first factor of the *Rhines* test to require good cause for a stay, the majority of circuits that have taken up this issue, even post-*Pace*, have limited their inquiry to whether there was good cause for failure to exhaust. *Compare Heleva*, 581 F.3d at 192 (reading *Pace* to consider "'good cause' for a stay") *with Blake v. Baker*, 745 F.3d 977, 981 (9th Cir. 2014) (interpreting both *Rhines* and *Pace* to require showings of good cause for failure to exhaust); *Elmore v. Ozmint*, 661 F.3d 783, 847 (4th Cir. 2011) (applying "*Rhines*'s requirement of good cause for the failure to exhaust");
(continued...)

I therefore disagree with the majority's assertion that, because Doe may use *McQuiggin*'s actual innocence exception to return to federal court, he cannot show good cause; the necessity of a stay has no bearing on whether Doe had good cause for his failure to exhaust. Instead, I conclude that we cannot assess whether Doe can satisfy *Rhines*'s good cause requirement without a remand.

Such a remand is unnecessary here, however. Even if *Rhines* applies, I find determinative the question that the majority has reserved: whether an actual innocence claim is a freestanding basis for habeas relief.

Doe has brought before us a total of five habeas claims. He all but concedes that four of his five claims should have been filed within one year of the discovery of their factual predicates in 2008—considerably more than a year before he filed this action. *See* 28 § U.S.C. 2254(e)(2). Thus, he has requested a stay to stop the clock on his one arguably timely claim: his actual innocence claim, which was ostensibly filed within one year of the discovery of new evidence in 2011. An actual innocence claim, however, is not a freestanding basis for habeas relief.

---

[3](...continued)
*Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011) (holding that belatedly disclosed *Brady* materials may constitute good cause for failure to exhaust); *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (holding that petitioner failed to show good cause for failure to exhaust); *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005) (holding that the petitioner points to no good cause for failure to exhaust); *Rhines v. Weber*, 409 F.3d 982, 983 (8th Cir. 2005) (remanding for findings as to whether the petitioner "had good cause for failing to exhaust the claim").

Although the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," *McQuiggin*, 133 S. Ct. at 1931, we have. Our cases definitively foreclose independent actual innocence claims in this circuit. For example, in *Stafford v. Saffle*, we identified that the Supreme Court has "strongly suggest[ed]" that an actual innocence claim is not "by itself, an adequate basis for habeas relief." 34 F.3d 1557, 1561 (10th Cir. 1994) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Then, to remove any doubt, we held in *LaFevers v. Gibson* that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." 238 F.3d 1263, 1265 n.4 (10th Cir. 2001); *see also Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[T]he claim of innocence is merely the means by which an otherwise barred constitutional error affecting the fairness of the petitioner's trial can be heard."); *Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999); *Castro v. Oklahoma*, 71 F.3d 1502, 1511 (10th Cir. 1995); *Brecheen v. Reynolds*, 41 F.3d 1343, 1357 (10th Cir. 1994).

In addition to fidelity to our precedent, I would reaffirm the rule set forth in *LaFevers* because, as the Supreme Court and this court have repeatedly articulated, acknowledging a freestanding actual innocence claim clashes with the purpose of the habeas doctrine. *See Herrera*, 506 U.S. at 400 ("[F]ederal habeas

courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.").

For these reasons, rather than the reasons the majority has articulated, I would affirm the district court's decision to dismiss Doe's petition without prejudice.